# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

HO-CHUNK NATION,

        *Plaintiff*,

    v.

KALSHI INC., KALSHIEX LLC,
ROBINHOOD MARKETS, INC.,
ROBINHOOD DERIVATIVES LLC, AND
DOES 1-20,

        *Defendants*.

Case No. 3:25-cv-00698

## REPLY BRIEF IN FURTHER SUPPORT OF KALSHI DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ........................................................................ 1

II.   ARGUMENT ............................................................................................... 3

    A.   PLAINTIFF FAILS TO STATE AN IGRA CLAIM (COUNT I)............................. 3

        1.   Plaintiff Has No Right of Action Under IGRA to Enjoin Kalshi's
             Conduct. ...................................................................................... 3

        2.   Congress Did Not Empower Tribes to Regulate Derivatives Trading on
             CFTC-Designated Contract Markets. ................................................ 8

        3.   Plaintiff's Attack on Kalshi's CEA Compliance Cannot Rescue Its IGRA
             Claim. .......................................................................................... 11

    B.   PLAINTIFF FAILS TO STATE AN ORDINANCE CLAIM (COUNT II)............. 13

        1.   IGRA Does Not Give the Tribe Jurisdiction Over Kalshi. ................... 13

        2.   The CEA Preempts the Ordinance. ................................................. 15

    C.   PLAINTIFF'S SOVEREIGNTY CLAIM FAILS TO SATISFY ARTICLE III'S
         CASE OR CONTROVERSY REQUIREMENT (COUNT IV). ............................. 17

    D.   PLAINTIFF FAILS TO STATE A LANHAM ACT CLAIM (COUNT V). ........... 19

        1.   The Opposition Fails to Remedy Plaintiff's Lack of Standing. ........... 19

        2.   The Opposition Does Not Identify Any Well-Pled Allegation of Falsity. ....... 21

        3.   The Opposition Does Not Identify Any Well-Pleaded Allegation of
             Consumer Deception. .................................................................... 24

    E.   PLAINTIFF FAILS TO STATE A CIVIL RICO CLAIM (COUNT III). ............... 25

        1.   Plaintiff Has Not Alleged Any Predicate Acts. ................................. 25

            a.   Wire Fraud .......................................................................... 25

            b.   The Wire Act and 18 U.S.C. § 1955 ........................................ 27

        2.   Plaintiff Has Not Alleged a RICO Enterprise. .................................. 30

        3.   Plaintiff Has Not Alleged a RICO Injury. ........................................ 31

    F.   PLAINTIFF FAILS TO PLEAD ANY CLAIM AGAINST KALSHI INC ............. 32

III.  CONCLUSION ........................................................................................... 32

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                          **Page(s)**

*Alabama v. PCI Gaming Auth.*,
   801 F.3d 1278 (11th Cir. 2015) ................................................................12

*Anza v. Ideal Steel Supply Corp.*,
   547 U.S. 451 (2006)................................................................................31

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..........................................................................19, 31

*Atkinson Trading Co. v. Shirley*,
   532 U.S. 645 (2001)................................................................................14

*Bank of America, N.A. v. Knight*,
   725 F.3d 815 (7th Cir. 2013) ..................................................................32

*Bd. of Forensic Document Exam'rs v. ABA*,
   922 F.3d 827 (7th Cir. 2019) ..................................................................22

*Big Lagoon Rancheria v. California*,
   789 F.3d 947 (9th Cir. 2015) ..................................................................12

*Bilek v. FDIC*,
   8 F.4th 581 (7th Cir. 2021) ................................................................30, 32

*Blue Lake Rancheria v. Kalshi Inc.*,
   2025 WL 3141202 (N.D. Cal. Nov. 10, 2025) ........................................... *passim*

*Branch v. Smith*,
   538 U.S. 254 (2003)................................................................................27

*Bugenig v. Hoopa Valley Tribe*,
   266 F.3d 1201 (9th Cir. 2001) ................................................................15

*California v. Cabazon Band of Mission Indians*,
   480 U.S. 202 (1987)..................................................................................6

*California v. Iipay Nation of Santa Ysabel*,
   898 F.3d 960 (9th Cir. 2018) ........................................................... *passim*

*Cayuga Nation v. N.Y. State Gaming Comm'n*,
   2025 WL 2161290 (N.D.N.Y. July 30, 2025) ...................................................3, 4

*Child's Health Def. v. Meta Platforms, Inc.*,
   112 F.4th 742 (9th Cir. 2024) ..................................................................32

*City of Duluth v. Fond du Lac Band of Lake Superior Chippewa*,
    702 F.3d 1147 (8th Cir. 2013) ........................................................12

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
    173 F.3d 725 (9th Cir. 1999) ........................................................24

*Commonwealth v. Biden*,
    57 F.4th 545 (6th Cir. 2023) ..........................................................7

*Cousins v. Sec'y of U.S. Dep't of Transp.*,
    880 F.2d 603 (1st Cir. 1989) ........................................................12

*Data Rsch. & Handling, Inc. v. Vongphachanh*,
    278 F. Supp. 3d 1066 (N.D. Ind. 2017) .......................................22

*EEOC v. Cherokee Nation*,
    871 F.2d 937 (10th Cir. 1989) ......................................................16

*Eli Lilly & Co. v. Arla Foods, Inc.*,
    893 F.3d 375 (7th Cir. 2018) ........................................................21

*Food Mktg. Inst. v. Argus Leader Media*,
    588 U.S. 427 (2019).........................................................................4

*Gensler v. Strabala*,
    764 F.3d 735 (7th Cir. 2014) ........................................................22

*Ho-Chunk, Inc. v. Sessions*,
    894 F.3d 365 (D.C. Cir. 2018) ......................................................16

*Hot Wax, Inc. v. Turtle Wax, Inc.*,
    191 F.3d 813 (7th Cir. 1999) ........................................................25

*Jackson v. PayDay Fin., LLC*,
    764 F.3d 765 (7th Cir. 2014) ...................................................14, 18

*Jenkins v. Heintz*,
    124 F.3d 824 (7th Cir. 1997) ........................................................11

*KalshiEX LLC v. CFTC*,
    2024 WL 4164694 (D.D.C. Sep. 12, 2024) ...............................13, 28

*KalshiEX LLC v. Flaherty*,
    2025 WL 1218313 (D.N.J. Apr. 28, 2025) ....................................29

*KalshiEX, LLC v. Hendrick*,
    2025 WL 3286282 (D. Nev. Nov. 24, 2025) ..............................29, 30

*KalshiEX LLC v. Martin*,
    793 F. Supp. 3d 667 (D. Md. 2025) ..................................................................30

*Kaye v. D'Amato*,
    357 F. App'x 706 (7th Cir. 2009) ..............................................................26, 27

*Knox v. Am. Fam. Ins. Co.*,
    2025 WL 1137222 (W.D. Wis. Apr. 10, 2025) (Conley, J.).......................5

*Kunes Country Auto. Mgmt. Inc. v. Walters*,
    2024 WL 2114006 (E.D. Wis. May 10, 2024)..........................................22

*Lewis v. Acuity Real Est. Servs., LLC*,
    597 F. Supp. 3d 1154 (E.D. Mich. 2022)..................................................20

*Maffick LLC v. Facebook, Inc.*,
    2021 WL 1893074 (N.D. Cal. May 11, 2021) ..........................................20

*Martin v. Wendy's Int'l, Inc.*,
    183 F. Supp. 3d 925 (N.D. Ill. 2016) ........................................................20

*Marx v. Gen. Revenue Corp.*,
    568 U.S. 371 (2013)....................................................................................3

*McLaughlin v. Homelight, Inc.*,
    2021 WL 5986913 (C.D. Cal. Sep. 17, 2021)....................................19, 21

*Medical Marijuana, Inc. v. Horn*,
    604 U.S. 593 (2025)..................................................................................31

*Menominee Tribal Enters. v. Solis*,
    601 F.3d 669 (7th Cir. 2010) ....................................................................16

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*,
    456 U.S. 353 (1982)..................................................................................31

*Michigan v. Bay Mills Indian Cmty.*,
    572 U.S. 782 (2014)..............................................................................7, 18

*MillerKing v. DoNotPay, Inc.*,
    702 F. Supp. 3d 762 (S.D. Ill. 2023) ........................................................19

*Montana v. United States*,
    450 U.S. 544 (1981)..................................................................................13

*Moreland v. Club 390 Corp.*,
    2019 WL 13076638 (N.D. Ill. Aug. 26, 2019) ........................................21

*Murphy v. NCAA*,
    584 U.S. 453 (2018)....................................................................................28

*N. Am. Derivatives Exch., Inc., d/b/a Crypto.com v. Nev. Gaming Control Bd.*
    (*Crypto*),
    2025 WL 2916151 (D. Nev. Oct. 14, 2025) ...........................................29, 30

*NLRB v. Little River Band of Ott. Indians*,
    788 F.3d 537 (6th Cir. 2015) .................................................................19

*Paul Davis Restoration, Inc. v. Everett*,
    2014 WL 7140038 (E.D. Wis. Dec. 12, 2014) .....................................22

*Plains Com. Bank v. Long Fam. Land & Cattle Co.*,
    554 U.S. 316 (2008)..........................................................................14, 18

*Priority Int'l Animal Concepts, Inc. v. Bryk*,
    2012 WL 6020044 (E.D. Wis. Dec. 3, 2012) .......................................22

*QVC Inc. v. Your Vitamins, Inc.*,
    439 F. App'x 165 (3d Cir. 2011) ..........................................................25

*Ratfield v. U.S. Drug Testing Lab'ys, Inc.*,
    140 F.4th 849 (7th Cir. 2025) ...............................................................32

*Robinson v. City Colls. of Chi.*,
    656 F. Supp. 555 (E.D. Ill. 1987)..........................................................26

*Sokaogon Chippewa Cmty. v. Babbitt*,
    214 F.3d 941 (7th Cir. 2000) .................................................................18

*South Carolina v. Catawba Indian Tribe, Inc.*,
    476 U.S. 498 (1986)...............................................................................16

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)...............................................................................18

*Stifel, Nicolaus & Co. v. Lac du Flambeau Band of Lake Superior Chippewa*
    *Indians*,
    807 F.3d 184 (7th Cir. 2015) ..............................................................2, 14

*Stockbridge-Munsee Cmty. v. Wisconsin*,
    922 F.3d 818 (7th Cir. 2019) ...................................................................8

*Strate v. A-1 Contractors*,
    520 U.S. 438 (1997)...............................................................................14

*In re Sw. Airlines Voucher Litig.*,
    799 F.3d 701 (7th Cir. 2015) ................................................................3

*Thermal Design, Inc. v. Guardian Bldg. Prods., Inc.*,
    2009 WL 1181327 (E.D. Wis. Apr. 29, 2009).......................................22

*TNT Amusements, Inc. v. Torch Elec., LLC*,
    2025 WL 945706 (E.D. Mo. Mar. 28, 2025), *reconsideration granted in part*
    *on other grounds*, 2025 WL 2336858 (E.D. Mo. Aug. 13, 2025) ...........23

*Towada Audio Co. v. Aiwa Corp.*,
    2019 WL 1200748 (N.D. Ill. Mar. 14, 2019).......................................21

*United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v.*
    *Walgreen Co.*,
    719 F.3d 849 (7th Cir. 2013) ..............................................................30

*United States v. Filer*,
    56 F.4th 421 (7th Cir. 2022) ...............................................................26

*United States v. Nordic Vill., Inc.*,
    503 U.S. 30 (1992)...............................................................................11

*United States v. Patel*,
    778 F.3d 607 (7th Cir. 2015) ................................................................4

*United States v. Wheeler*,
    435 U.S. 313 (1978)..............................................................................13

*Vicom, Inc. v. Harbridge Merchant Servs., Inc.*,
    20 F.3d 771 (1994)...............................................................................32

*Viehweg v. Ins. Programs Mgmt. Grp., LLC*,
    2024 WL 4165078 (7th Cir. Sep. 12, 2024) .......................................31

*W. Flagler Assocs. v. Haaland*,
    573 F. Supp. 3d 260 (D.D.C. 2021).....................................................20

*Wisconsin v. Ho-Chunk Nation*,
    478 F. Supp. 2d 1093 (W.D. Wis. 2007) ..............................................5

*Wisconsin v. Ho-Chunk Nation*,
    512 F.3d 921 (7th Cir. 2008) ............................................................3, 8

*Wojciechowicz v. Garland*,
    77 F.4th 511 (7th Cir. 2023) ...............................................................16

*Yazoo & Miss. Valley R.R. Co. v. Thomas*,
  132 U.S. 174 (1889) .................................................................................7, 15

**Statutes**

5 U.S.C. § 551 .................................................................................................12

5 U.S.C. § 702 .................................................................................................12

5 U.S.C. § 706 .................................................................................................12

7 U.S.C. § 1a ..................................................................................................28

7 U.S.C. § 2 ............................................................................................. *passim*

7 U.S.C. § 6 ..................................................................................................28

7 U.S.C. § 7 ..................................................................................................28

7 U.S.C. § 7a-2 ..............................................................................................13

18 U.S.C. § 1084 ............................................................................................25

18 U.S.C. § 1166 ............................................................................................15

18 U.S.C. § 1343 ............................................................................................25

18 U.S.C. § 1955 ..................................................................................25, 26, 27

25 U.S.C. § 2701 ..............................................................................................7

25 U.S.C. § 2703 ..............................................................................................7

25 U.S.C. § 2705 ..............................................................................................7

25 U.S.C. § 2710 ..................................................................................... *passim*

28 U.S.C. § 1331 ............................................................................................17

31 U.S.C. § 5361 ..............................................................................................9

31 U.S.C. § 5362 ..................................................................................... *passim*

9 HCC § 945.01 ..............................................................................................29

Wis. Stat. § 409.102 (2018) .....................................................................10, 28

Wis. Stat. § 945.01 (2017) .........................................................................1, 28

## Other Authorities

17 C.F.R. § 38.3 ...................................................................................................28

17 C.F.R. § 40.2 ...................................................................................................13

17 C.F.R. § 40.11 .......................................................................................11, 13, 30

73 Fed. Reg. 25,669 (May 7, 2008) .................................................................2, 11

Antonin Scalia & Brian Garner, *Reading Law: The Interpretation of Legal Texts*
(2012) .............................................................................................................7

*Breach*, The American Heritage Dictionary of the English Language (5th ed.
2016) ..............................................................................................................4

*Breach*, Merriam-Webster's Collegiate Dictionary (11th ed. 2003) ....................4

*Breach*, Webster's New World College Dictionary (5th ed. 2014) ......................4

Complaint, *SocialSphere, Inc. v. Chavez*,
No. 25-cv-2557 (Mass. Super. Ct.), Dkt. No. 1 (Oct. 15, 2025) .................21

Const. of The Ho-Chunk Nation, art. IV, § 3 .......................................................6

Grant Harvey, *Meta's $72B Superintelligence Bet is Building a Future that Could
Kill Its Own Apps*, The Neuron (July 30, 2025),
https://www.theneuron.ai/explainer-articles/metas-72b-superintelligence-bet-
is-building-a-future-that-could-kill-its-own-apps ....................................24

James Royal, *Options vs. stocks: Which one is better for you?,* yahoo!finance
(Aug. 25, 2025), https://finance.yahoo.com/news/options-vs-stocks-one-
better-210539982.html .................................................................................24

## I.    PRELIMINARY STATEMENT

The Complaint alleges that Kalshi is a designated contract market ("DCM") that has been regulated by the CFTC and subject to the CEA since 2020.  ¶ 69.[1]  That simple, indisputable fact is fatal to the IGRA claim at the heart of this action.  No matter how strenuously Plaintiff seeks to affix the "sports betting" label to Kalshi's event contracts, it cannot change Congress's treatment of them.  In enacting UIGEA, Congress provided that transactions meeting the definition of "bet or wager" would nonetheless be immune from application of tribal gambling laws if the transactions occur on a DCM.  Surely it did not create that carveout while also intending for tribes to regulate such transactions through IGRA—a statute that was passed nearly two decades earlier and before the advent of the internet.  *California v. Iipay Nation of Santa Ysabel*, 898 F.3d 960, 964 n.6, 968 (9th Cir. 2018).  As the court correctly held in *Blue Lake Rancheria v. Kalshi Inc.*, IGRA does not apply to Kalshi's event contracts.  2025 WL 3141202, at *1 (N.D. Cal. Nov. 10, 2025).  This Court should reach the same result.

Plaintiff's opposition brief (ECF No. 47, the "Opposition" or "Opp.") does not even attempt to argue that the *Blue Lake Rancheria* court got it wrong.  Rather, Plaintiff repeats the same argument that the *Blue Lake Rancheria* court rejected—that UIGEA cannot apply here because if it did, it would "alter" Wisconsin law or Plaintiff's compact with Wisconsin.  Worse, Plaintiff neglects to mention that Wisconsin's sports betting law—just like UIGEA—expressly carves out transactions conducted on DCMs.  Wis. Stat. § 945.01(1)(a)(1) (2017).  Even if it did not, it is the CEA, not UIGEA, that displaces state and tribal laws and compacts by providing the CFTC with exclusive jurisdiction over trading on DCMs.  7 U.S.C. § 2(a)(1)(A).  UIGEA merely

---

[1] Unless otherwise specified, "¶ _" refers to paragraphs in the Complaint.  ECF No. 1. Capitalized terms are as defined in Kalshi's moving brief (ECF No. 29, "Moving Brief" or "Mov. Br.").

preserves the preemptive effect of the CEA by ensuring that a single federal regulator, the CFTC, oversees nationwide derivatives exchanges, not a multitude of states and tribes.

Plaintiff also contends that UIGEA's carveout does not apply because Kalshi's sports event contracts are not swaps or futures. The Complaint's only theory as to why they are not swaps or futures—that they lack "legitimate hedging and price discovery functions" (¶ 60)—assumes a requirement that is nowhere in the statute. In fact, Congress *removed* a preexisting "economic purpose" requirement in the 2000 amendments to the CEA. *See* 73 Fed. Reg. 25,669, 25,672 (May 7, 2008). In any event, the Court need not decide whether these contracts are swaps, futures, options, or some other instrument, because the UIGEA carveout applies to "any transaction" conducted on a DCM, 31 U.S.C. § 5362(1)(E)(ii), and thus to the transactions on Kalshi's DCM that the Complaint itself expressly alleges are at issue here.

The Opposition's defense of Plaintiff's ordinance and sovereignty claims fares no better. Plaintiff pretends that IGRA abrogated the Supreme Court's strict limits on the kinds of actions that tribes may bring against nonmembers, permitting Plaintiff to proceed against Kalshi. But Seventh Circuit precedent shows otherwise. *Stifel, Nicolaus & Co. v. Lac du Flambeau Band of Lake Superior Chippewa Indians*, 807 F.3d 184, 207-08 (7th Cir. 2015). And the Opposition appears to abandon any claim to sovereign authority over Kalshi, arguing instead that Plaintiff's authority derives from IGRA. Whatever the force of that argument, it cannot cure the Complaint's failure to identify any injury to Plaintiff's sovereignty, much less one that would satisfy Article III's case-or-controversy requirement.

As to its Lanham Act claim, Plaintiff argues that Kalshi's statements of opinion are actionable because Kalshi lacked good faith, though Plaintiff points to no allegations in support— let alone particularized ones—and ignores the fact that the *Blue Lake Rancheria* court reached the

2

opposite conclusion. Plaintiff tries to revive its claim by introducing a ***second*** Lanham Act theory, but it too lacks any support in the Complaint or the law. Nor can the Opposition rescue Plaintiff's RICO claim, instead advancing a bizarre hypothesis that Kalshi is misleading the courts, but not its own customers, and causing harm to Plaintiff's non-existent sports betting business. Plaintiff also fails to defend its lack of allegations against Kalshi, Inc. The Complaint is riddled with dispositive flaws and should be dismissed with prejudice.

## II.    ARGUMENT

### A.  PLAINTIFF FAILS TO STATE AN IGRA CLAIM (COUNT I).

#### 1.    Plaintiff Has No Right of Action Under IGRA to Enjoin Kalshi's Conduct.

Plaintiff's Opposition does not dispute that, to sue under 25 U.S.C. § 2710(d)(7)(A)(ii), a plaintiff must allege a violation of a state-tribal compact. Nor could it—the statutory text and Seventh Circuit precedent are unequivocal on this point. *See Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 930 (7th Cir. 2008); *see also Cayuga Nation v. N.Y. State Gaming Comm'n*, 2025 WL 2161290, at *2-3 (N.D.N.Y. July 30, 2025) (statute requires unlawful class III gaming ***and*** violation of a compact). Plaintiff instead argues that it has alleged a violation of its compact with the State of Wisconsin (the "Compact") because that agreement does not authorize Kalshi to conduct class III gaming on Plaintiff's tribal lands. Opp. 8-9 (citing ¶¶ 37-41). Plaintiff is wrong.

*First*, as a matter of statutory construction, Plaintiff's reading would render the words "and conducted in violation of any Tribal-State compact," 25 U.S.C. § 2710(d)(7)(A)(ii), wholly superfluous. *See In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 710 (7th Cir. 2015) ("'[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.'" (quoting *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013)). Section 2710(d)(1) of IGRA expressly addresses class III gaming that is unauthorized by compact, providing that it is unlawful. If Congress had intended to authorize tribes to sue under IGRA for

3

"unauthorized" class III gaming activity generally, it would have said that, rather than imposing a different requirement—that the conduct in question be "in violation of" a compact. *Blue Lake Rancheria*, 2025 WL 3141202, at *5 (differentiating between activity that is unauthorized and activity that violates a compact). It did not. Nor can Plaintiff rewrite the statute by quoting from legislative history. *E.g.*, Opp. 3-4 (citing Senate report). The text of the statute controls. *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 436 (2019) (legislative history cannot "muddy" the meaning of "clear statutory language"). Indeed, the court in *Cayuga Nation* rejected an identical effort by a tribe to expand its right of action by supplanting clear statutory text with an isolated quote from a congressional report. 2025 WL 2161290, at *2-3 (declining to adopt tribe's invocation of Senate report in favor of unambiguous statutory text).

*Second*, the Opposition fails to explain how a non-party to a compact could "violate" that compact. Plaintiff argues that "Kalshi confuses the word 'violation' with breach." Opp. 6. But Plaintiff's semantics fall flat; dictionaries define "breach" to include "violation." *Breach*, Merriam-Webster's Collegiate Dictionary (11th ed. 2003) (an "infraction ***or violation*** of a law, obligation, tie, or standard") (emphasis added); *Breach*, The American Heritage Dictionary of the English Language (5th ed. 2016) (a "***violation*** or infraction, as of a contract, law, legal obligation, or promise") (emphasis added); *Breach*, Webster's New World College Dictionary (5th ed. 2014) (a "failure to observe the terms, as of a law or promise, the customary form, etc.; **violation**; infraction") (emphasis added); *see United States v. Patel*, 778 F.3d 607, 613 (7th Cir. 2015) (courts "frequently look to dictionary definitions" to "determine the plain meaning of words").

Plaintiff turns from semantics to metaphysics in claiming that a compact has a dual character as both "a private contract and a regulatory device," such that the parties "breach" the contract, while non-parties "violate" the "regulatory device." Opp. 7. The Court should reject

4

these abstractions.  Section 2710(d)(3)(C)(v), which Plaintiff cites in support of its purported "breach/violation" dichotomy, Opp. 7, merely provides that a compact may include provisions relating to "remedies for breach [of contract]."  That language helps Kalshi, not Plaintiff.  It reflects Congress's understanding that "a compact is a contract, subject to the ordinary rules of contract construction." *Wisconsin v. Ho-Chunk Nation*, 478 F. Supp. 2d 1093, 1098 (W.D. Wis. 2007), *aff'd in part*, *vacated in part*, 512 F.3d 921 (7th Cir. 2008).  And Plaintiff has no answer for the well-settled principle that "a contract cannot bind a nonparty." *Knox v. Am. Fam. Ins. Co.*, 2025 WL 1137222, at *5 (W.D. Wis. Apr. 10, 2025) (Conley, J.); Mov. Br. 13.

*Third*, Plaintiff's invocation of Section VI of the Compact—which states that Plaintiff shall have the "sole proprietary interest in all Class III gaming activities operated under this Compact"— also fails.  Opp. 9.  Notably, the Complaint itself does not mention this provision, probably because it is inapposite in at least two respects.  One, it applies to activities "operated under this compact," which Kalshi's DCM does not do.  Two, it merely restricts ***the tribe*** from "authoriz[ing], permit[ting], or licens[ing] the operation of any Class III gaming activity . . . by any other person."  ECF No. 41-1, § VI.  By its terms, it imposes no obligation on third parties that could conceivably be "violated."  Nor does it provide a basis to distinguish the court's decision in *Blue Lake Rancheria*, in which the court concluded that the plaintiff tribes were unlikely to succeed on their claim that Kalshi's event contracts violated a tribal-state compact.  There, as here, the plaintiffs invoked tribal exclusivity in conducting class III gaming on Indian lands.  But the court held that the compact language only governed ***the tribe's*** conduct and was "silent" as to third parties. *Blue Lake Rancheria,* 2025 WL 3141202, at *5.  The court noted that even if the reason for such silence was the tribe's exclusivity in class III gaming, "that does not mean the compact . . . prohibit[s] [Kalshi's] conduct." *Id.*  The same is true here.

5

Unable to point to a Compact provision that Kalshi could have "violated," Plaintiff instead quotes its Ordinance as if it were the Compact. It is not. Plaintiff claims that "its Gaming Compact . . . makes it clear" that "'[n]o person or entity, other than the Ho-Chunk Nation, shall conduct gaming without . . . obtaining a license,'" but this language appears nowhere in Plaintiff's compact with Wisconsin. Opp. 10 (quoting Section 6.C of Ordinance). Advertent or not,[2] this error underscores that it is Plaintiff's *ordinance*, not a *compact*, that purports to impose more general obligations—such as the Ordinance's directive that "[n]o person or entity" may conduct gaming without a license. ECF No. 41-6 § 4.B. That is because the ordinance is a type of law. *See* Const. of The Ho-Chunk Nation, art. IV, § 3(a) ("This policy shall be made into laws, including codes, ordinances, resolutions and statutes by the Legislative Branch of the Ho-Chunk Nation."). The Compact, by contrast, is "made and entered into" solely by and between Plaintiff and the State of Wisconsin and governs only their conduct. ECF No. 41-1 at 5 of 46.

Plaintiff says it would undermine "Congress's stated purpose in passing IGRA" if the Court were to find, like the court in *Blue Lake Rancheria*, that Kalshi's alleged conduct does not violate the Compact. Opp. 7. But the fact that compacts govern state-tribal relations, rather than the conduct of third parties, is entirely consistent with IGRA's purpose.

As Plaintiff recognizes, *id.* at 3, Congress enacted IGRA in response to *California v. Cabazon Band of Mission Indians*, 480 U.S. 202 (1987), which held that states lacked the authority to enforce their gambling laws on Indian reservations. *Id.* at 221-22. IGRA aimed to restore a

---

[2] Plaintiff asserts that the Compact incorporates the Ordinance by reference. Opp. 9. This is yet another error. The cited provision states that the Compact incorporates the "Gaming Code" by reference. ECF No. 41-1, § XXII. The Compact does not define the term "Gaming Code," but Plaintiff's Ordinance makes clear that the Gaming Code is something different from the Ordinance. *See* ECF No. 41-6, § 5.B (Ordinance requiring that "[t]he Nation shall adopt within its Gaming Code provisions prohibiting gaming by persons employed by the Nation at any site of employment").

measure of **state jurisdiction** in the area of gaming regulation, particularly as to class III gaming, while also respecting the sovereignty of Indian tribes, resulting in a careful balancing of state and tribal jurisdiction achieved through compacts. *See Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 795 n.6 (2014) (describing the "problem *Cabazon* created" as "a vacuum of state authority over gaming in Indian country," which IGRA addresses through a "compact-based solution to that difficulty"). Indeed, IGRA focuses on balancing state and tribal jurisdiction, setting forth in detail the procedures states and tribes must follow (and the topics they must address) in establishing regulations for class III gaming as well as a structure for federal oversight. *See* 25 U.S.C. § 2705; *id.* § 2710(d).

Plaintiff repeatedly claims, citing Congress's introductory findings, that IGRA gave tribes the "exclusive right to regulate gaming activity on Indian lands." *E.g.*, Opp. 4 (citing 25 U.S.C. § 2701(5)). But here, too, Plaintiff is wrong—Congress's "findings" merely reflect the circumstances that led it to enact the law, and do not confer any powers of their own. *See Yazoo & Miss. Valley R.R. Co. v. Thomas*, 132 U.S. 174, 188 (1889) ("[A]s the preamble is no part of the act, and cannot enlarge or confer powers, nor control the words of the act, unless they are doubtful or ambiguous, the necessity of resorting to it to assist in ascertaining the true intent and meaning of the legislature is in itself fatal to the claim set up"); *Commonwealth v. Biden*, 57 F.4th 545, 551 (6th Cir. 2023) ("[A] congressional expression of purpose has as much real-world effect as a congressional expression of apology.") (quoting Antonin Scalia & Brian Garner, *Reading Law: The Interpretation of Legal Texts*, 217 (2012)). And in fact IGRA only confers "exclusive" jurisdiction on tribes over class I gaming (defined as "traditional forms of Indian gaming," 25 U.S.C. § 2703(6)). *Compare* 25 U.S.C. § 2710(a)(1) (giving tribes "exclusive jurisdiction" over

class I gaming), *with id.* § 2710(d) (providing for regulation of class III gaming involving tribal, state, and federal roles).

It is this insight that led the Seventh Circuit in *Wisconsin v. Ho-Chunk Nation* to recognize that the right of action under Section 2710(d)(7)(A)(ii) is limited to compact violations "relat[ing] to a compact provision agreed upon pursuant to the IGRA negotiation process." 512 F.3d at 933. The court identified seven matters to which a compact violation must relate to be actionable. These matters relate to "the IGRA negotiation process," *i.e.*, states' and tribes' rights as against each other, rather than against third parties. *Id.*; *see also Stockbridge-Munsee Cmty. v. Wisconsin*, 922 F.3d 818, 821 (7th Cir. 2019) ("[IGRA's] provisions concern rights that tribes may assert against states and circumstances under which states may block gaming that tribes want to offer."). Plaintiff is wrong to say *Ho-Chunk Nation* supports its IGRA claim. Opp. 8. It does the opposite.

## 2. Congress Did Not Empower Tribes to Regulate Derivatives Trading on CFTC-Designated Contract Markets.

This dispute arises at the intersection of three federal statutes—IGRA, UIGEA, and the CEA. The Moving Brief offered a reading that harmonizes them all: IGRA regulates the conduct of gaming activity "***on*** Indian lands"—that is, gaming operations physically conducted on tribal lands, like poker tables or slots. UIGEA regulates "bets or wagers" that can be placed via the internet in a state or reservation where it is unlawful, but carves out from that definition the distinct and limited category of transactions that occur ***on a DCM***. And for good reason—casinos and financial markets are fundamentally different, and UIGEA enshrined Congress's judgment that because of that difference, trading on DCMs would be regulated under the CEA, with a single federal regulator—the CFTC—overseeing trading on derivatives markets. Mov. Br. 16-18. *Blue Lake Rancheria* lays it out perfectly:

> Since it is undisputed Kalshi is a registered entity under the Commodity Exchange Act, and that its transactions are conducted

> on the Kalshi internet site, its internet contracts are not bets or
> wagers under the UIGEA and therefore do not constitute 'unlawful
> internet gambling' even if the contracts are received, placed or
> transmitted from persons on Indian lands where internet gambling
> is illegal.  2025 WL 3141202, at *6.

Plaintiff responds by arguing that UIGEA's carveout for derivatives trading does not apply because of a provision in UIGEA stating that it "'shall not be construed as altering, limiting, or extending'" any federal or state law or state-tribal compact concerning gambling.  Opp. 11-12 (quoting 31 U.S.C. § 5361(b)).  While UIGEA so provides, Kalshi does not ask the Court to adopt a construction that would do any of those things.

UIGEA does not alter IGRA at all.  Kalshi's position is not that UIGEA "impliedly repealed" a decision that had been made through IGRA to regulate gaming conducted nationally over the internet.  Opp. 13-14.  Rather, the point is that, when Congress passed IGRA, it did not **consider** that issue at all because, as the Ninth Circuit recognized in *California v. Iipay Nation of Santa Ysabel*, the internet had not been introduced to the public yet.  898 F.3d at 964 n.6 ("We note that Congress passed IGRA in 1988—a few years before the internet became publicly available. . . . [T]he statute nowhere referenced the internet, or other networking capabilities that reach beyond Indian lands."); *see also Blue Lake Rancheria*, 2025 WL 3141202, at *6 ("The UIGEA, unlike IGRA, expressly addresses internet gaming that can be accessed in locations where such gaming is unlawful, *including Indian lands*.") (emphasis in original) (citing 31 U.S.C. § 5362(10)).  And when Congress **did** address the issue through UIGEA, it adopted the formulation advocated by Plaintiff—that "bets or wagers" shall be deemed to occur where they are "initiated"—**except** with respect to transactions conducted on DCMs such as Kalshi.  Congress

provided that DCM-based transactions are not subject to UIGEA at all. Plaintiff simply pretends that this carveout does not exist.[3]

UIGEA does not alter Wisconsin law or the Compact either. As an initial matter, Plaintiff concedes that Wisconsin law exempts derivatives trading from its gaming statute. It argues, however, that the exemption does not extend to event contracts. Opp. 12 & n.3. Plaintiff is wrong. Wisconsin law defines "commodity contract[s]" to include contracts that are "[t]raded on . . . a board of trade that has been designated as a contract market for such a contract pursuant to federal commodities laws." Wis. Stat. § 409.102(dm)(1) (2018). Kalshi is not arguing that UIGEA alters state law. On the contrary, UIGEA's carveout fits the existing statutory scheme perfectly.

As for the Compact, the only provision that Plaintiff identifies as being "altered" by Kalshi's reading of UIGEA is one that governs **_the tribe's_** conduct, not Kalshi's. Opp. 13 (citing Section VI of Compact, which prohibits the tribe from authorizing, permitting, or licensing class III gaming by other persons). Kalshi's reading of UIGEA has no effect on that provision of the Compact, because compacts govern the rights and obligations of the parties, not third parties. _Blue Lake Rancheria_, 2025 WL 3141202, at *6 (rejecting the argument that Kalshi's reading of UIGEA would impermissibly "alter[]" or "limit[]" the governing compact because the identified provisions by their terms applied only to the tribe's conduct).[4]

---

[3] Plaintiff's effort to spin _Iipay Nation_ in its favor falls flat. Opp. 12. That case involved whether online gaming offered by a tribe was occurring off-reservation when the internet servers were located on-reservation, but users were not. 898 F.3d at 962. The Ninth Circuit acknowledged what UIGEA said on the matter—that bets or wagers are deemed to occur where they are "initiated." _Id._ at 968. In so holding, the court found that UIGEA did not alter IGRA precisely because IGRA was "silent" on the issue. _Id._

[4] Plaintiff's argument also proves too much. Every state with legalized gaming subjects it to state licensing regimes. If Congress's exclusion of on-DCM transactions from the definition of "bet or wager" would "alter" state or tribal law, then there would be no circumstance in which the carveout would have effect—Plaintiff's preferred reading of UIGEA's "rule of construction" would always

Nor can Plaintiff escape the UIGEA carveout by arguing that Kalshi seeks dismissal based on disputed allegations concerning the true nature of Kalshi's event contracts. Opp. 10-11. As an initial matter, whether Kalshi's event contracts qualify as "true" derivatives (in Plaintiff's parlance) is a legal question, not a factual one. *See* ¶¶ 60-62. And Plaintiff's allegation that Kalshi's contracts are not "true" derivatives because they allegedly lack any "hedging or other economic purpose" (¶ 61) is incorrect under federal law. The CEA contains no such requirement. The CEA *previously* imposed an "economic purpose" requirement, but Congress removed that requirement in 2000. 73 Fed. Reg. at 25,672. In any event, the Court need not decide whether Kalshi's event contracts are swaps, futures, options, or some other instrument, because UIGEA insulates from state or tribal liability not just swaps, but "***any transaction*** conducted on . . . a registered entity . . . under the Commodity Exchange Act" (*i.e.*, a DCM). 31 U.S.C. § 5362(1)(E)(ii). Kalshi's sports event contracts qualify on the face of the Complaint. ¶ 69.

### 3. Plaintiff's Attack on Kalshi's CEA Compliance Cannot Rescue Its IGRA Claim.

The Moving Brief explained in detail why Plaintiff's reading of the CEA's Special Rule and 17 C.F.R. § 40.11 is both irrelevant and wrong. Mov. Br. 18-21. Rather than respond on the substance, Plaintiff attacks the CFTC as a "gutted regulatory agency." Opp. 14. Plaintiff does not explain how or why that federal agency has been "gutted." Regardless, Plaintiff effectively admits that it is attempting to use IGRA to remedy a perceived regulatory void left by an agency with which Plaintiff evidently has policy disagreements. This does not work for many reasons.

---

override it. That is not a tenable interpretation. *Jenkins v. Heintz*, 124 F.3d 824, 833 (7th Cir. 1997) ("It is an elementary canon of construction that a statute should be interpreted so as not to render one part inoperative.") (citation modified); *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 36 (1992) (declining to adopt a construction that would violate the "settled rule that a statute must, if possible, be construed in such fashion that every word has some operative effect").

*First*, if Plaintiff wants to challenge the CFTC's oversight, the mechanism for doing so is an action against the CFTC under the Administrative Procedure Act, not an action against a registered entity to which the CFTC is not even a party. *See Big Lagoon Rancheria v. California*, 789 F.3d 947, 953 (9th Cir. 2015) (en banc) (state may not "use a collateral proceeding to end-run the procedural requirements governing [review of administrative action]" (citation and internal quotations omitted)).[5]  Plaintiff readily admits that the CFTC has elected not to undertake a public interest review of Kalshi's contracts. Opp. 14.  Under the statutory regime, when the CFTC does not initiate a public interest review or block a contract for listing on a DCM, that is itself an agency action. *See* 5 U.S.C. § 551(13) (APA defines "agency action" to include "failure to act").  Plaintiff may disagree with the CFTC's decision to permit listing of these contracts, but its only recourse is against the CFTC. *See* 5 U.S.C. §§ 702, 706(2) (permitting suit against agency where its action was contrary to law).  What Plaintiff cannot do is flout the CEA by attempting to use IGRA or its Ordinance to regulate products the CFTC has permitted Kalshi to offer.  *See Cousins v. Sec'y of U.S. Dep't of Transp.*, 880 F.2d 603, 605-06 (1st Cir. 1989) (noting that "[t]he APA was intended to provide . . . a single uniform method for review of agency action").

*Second*, even if Plaintiff's collateral attack were permissible, it continues to hinge on the idea that Congress, in enacting Dodd-Frank, could not have added swaps to the CFTC's exclusive jurisdiction without announcing that it was "repealing" IGRA.  Opp. 14.   This argument assumes that IGRA applies to gaming conducted over the internet.  But as Plaintiff knows, IGRA is "silent" on the matter, *Iipay Nation*, 898 F.3d at 968, and UIGEA preserves CEA preemption by excluding

---

[5]  *See also Alabama v. PCI Gaming Auth.*, 801 F.3d 1278, 1291 (11th Cir. 2015) ("collateral challenge" to agency decision was inappropriate; the "proper vehicle . . . is an APA claim"); *City of Duluth v. Fond du Lac Band of Lake Superior Chippewa*, 702 F.3d 1147, 1153 (8th Cir. 2013) ("challenge[ ]" to agency "determination" was "properly made under the Administrative Procedure Act," and "the review process established by Congress in the APA" could not "be circumvented").

DCM transactions from application of state or tribal law for purported "bets or wagers" placed over the internet. 31 U.S.C. § 5362(1)(E)(ii). If there is any "implied repeal" issue here, it arises from Plaintiff's contention that, when Congress passed IGRA in 1988, it silently exempted 280 or so Indian tribes around the country from the CEA's directive—enacted in 1974—that derivatives trading would be regulated exclusively by the CFTC. 7 U.S.C. § 2(a)(1)(A).

*Third*, the Opposition simply has no answers for Kalshi's thorough explanation of how the Special Rule and Regulation 40.11 work. It has no answer for why the CFTC created a 90-day public interest review process for contracts falling into the enumerated categories if it had already enacted a *per se* ban on such contracts. 17 C.F.R. § 40.11(c). It ignores both what the law says and the CFTC's clearly expressed view that the Special Rule provides for a "two-step inquiry"— first, whether the contracts fall into an enumerated category; and second, if so, whether they are "contrary to the public interest." Ex. J (ECF No. 30-10) at 48970-71; *see also KalshiEX LLC v. CFTC*, 2024 WL 4164694, at *3 (D.D.C. Sep. 12, 2024). It offers no rejoinder to the fact that, unless and until the CFTC has conducted a public interest review of sports event contracts and concluded that they are not permitted to be listed, those contracts comply with federal law if properly self-certified. 7 U.S.C. § 7a-2(c)(1); 17 C.F.R. § 40.2. And most fundamentally, it does not explain why any violation of the CEA or CFTC regulations would mean that the CEA does not apply at all, let alone that IGRA should govern instead.

## B. PLAINTIFF FAILS TO STATE AN ORDINANCE CLAIM (COUNT II).

### 1. IGRA Does Not Give the Tribe Jurisdiction Over Kalshi.

Plaintiff claims that Kalshi has violated its Gaming Ordinance, though the Complaint nowhere cites any particular provision Kalshi has violated. But Plaintiff has no sovereign authority over nonmembers, and certainly not over one based in New York running a nationwide derivatives exchange. *Montana v. United States*, 450 U.S. 544, 563-64 (1981) (quoting *United States v.*

*Wheeler*, 435 U.S. 313, 326 (1978) (recognizing that "relations between an Indian tribe and nonmembers of the tribe" are one of the "many. . . attributes of sovereignty" that tribes have lost)); *Plains Com. Bank v. Long Fam. Land & Cattle Co.*, 554 U.S. 316, 327 (2008); *Strate v. A-1 Contractors*, 520 U.S. 438, 445-46 (1997); *Jackson v. PayDay Fin., LLC*, 764 F.3d 765, 781-82 (7th Cir. 2014). Plaintiff makes no attempt to argue either of the two narrow exceptions to this rule apply here. *See* Mov. Br. 21-22; Opp. 14-16. Instead, Plaintiff argues that it is "not relying on its retained inherent sovereign power, but rather congressionally delegated authority under IGRA" to assert jurisdiction over Kalshi. Opp. 15-16. Therefore, Plaintiff claims, "the *Montana* framework" is "inapplicable." *Id.* at 15.

The Seventh Circuit disagrees. In *Stifel, Nicolaus & Co.*, a tribe sought to assert jurisdiction over nonmembers in tribal court. 807 F.3d at 207-08. The nonmembers brought suit in federal court to enjoin the tribal court action, arguing that the tribe lacked authority to enforce IGRA's provisions and tribal law against them. The Seventh Circuit agreed and, in doing so, applied the *Montana* framework. *Id.* (concluding that neither *Montana* exception applied). Plaintiff cites no authority suggesting this Court should take a different approach; indeed, the Opposition does not even acknowledge *Stifel*, even though the Moving Brief relies on it. Mov. Br. 23-24, 27. Under the *Montana* framework, Plaintiff has no jurisdiction to bring a claim for violation of its Ordinance against Kalshi. *Id.* at 21-23.

It is true that tribes may exercise jurisdiction over nonmembers that is specifically authorized by federal statute or treaty, *Stifel*, 807 F.3d at 205, but Plaintiff points to nothing in IGRA indicating that Congress "expressly conferred" such authority on tribes. *Atkinson Trading Co. v. Shirley*, 532 U.S. 645, 649-50 (2001). Plaintiff repeatedly points to Section 2701(5) in asserting that it has the "exclusive right to regulate gaming activity on Indian lands" (Opp. 15),

but that provision—setting forth one of Congress's findings in the statute's preamble—does not "specifically authorize[]" or "expressly confer" tribal jurisdiction over nonmembers. That is hardly surprising, given that IGRA's preambulatory "findings" merely describe the circumstances that led Congress to enact the legislation. *Yazoo*, 132 U.S. at 188. Indeed, the only provision of IGRA that does provide tribes with "exclusive" authority is limited to class I gaming and thus inapplicable to Plaintiff's claimed authority to regulate Kalshi's activity as class III gaming. 25 U.S.C. § 2710(a)(1).[6]

Nor do the other provisions Plaintiff cites say anything about—let alone "expressly confer[]"—tribal jurisdiction over nonmembers, other than licensees, which Kalshi is not. Opp. 15. Plaintiff highlights 25 U.S.C. § 2710(d)(2)(A), but that provision **limits** tribal authority to regulate a specific class of persons (licensees); it does not bestow tribes with broad authority to regulate all nonmembers. *Id.* (requiring ordinances in which a tribe may authorize any person or entity to engage in class III gaming to satisfy § 2710(b), which sets forth conditions and required federal approvals for ordinances intended to govern tribal gaming licenses). It certainly does not evince Congressional intent to give Plaintiff authority over nonmember non-licensees like Kalshi. *Compare Bugenig v. Hoopa Valley Tribe*, 266 F.3d 1201, 1215-18 (9th Cir. 2001) (finding that Congress had "expressly" given authority to tribe to regulate logging on reservation lands where Congress ratified tribal constitution that explicitly referred to regulation of nonmembers).

### 2. The CEA Preempts the Ordinance.

The CEA preempts the Ordinance. 7 U.S.C. § 2(a)(1)(A). There is no way around it. Even if IGRA gave Plaintiff jurisdiction to enforce the Ordinance against nonmembers, and the

---

[6] IGRA also confers "exclusive jurisdiction" on the federal government—not tribes—to prosecute violations of state gambling laws, unless that authority has been conferred through a tribal-state compact on the relevant state. 18 U.S.C. § 1166(d).

Ordinance were written or understood to apply to event contracts, preemption under the CEA would doom Count II. Plaintiff argues that the CEA does not apply to tribes. This is wrong: a tribe cannot exert authority over a federally regulated, 50-state financial market. After all, the "usual[]" rule is that tribes are subject to statutes of general applicability. *Menominee Tribal Enters. v. Solis*, 601 F.3d 669, 670 (7th Cir. 2010). Plaintiff parrots the few exceptions to that rule (Opp. 16), but provides no reason why any apply here, and no answer to Kalshi's cases establishing that none do. Mov. Br. 25-26.[7] Plaintiff suggests that the Indian canon of construction regarding resolution of ambiguities in favor of Indians means that the CEA does not apply to them. But "this canon applies only to statutes that are both ambiguous and passed for the benefit of Indian tribes," *Ho-Chunk, Inc. v. Sessions*, 894 F.3d 365, 369 n.4 (D.C. Cir. 2018), and does not "permit disregard of the clearly expressed intent of Congress" to confer exclusive jurisdiction over DCMs on the CFTC. *See South Carolina v. Catawba Indian Tribe, Inc.*, 476 U.S. 498, 506 (1986).

Instead, Plaintiff contends that tribal gaming ordinances are "akin to federal regulatory law." Opp. 16. Plaintiff is not a federal regulator. And even if the Court were to entertain the notion of treating the Ordinance as a federal regulation, the CEA, on its face, preempts other "regulatory law" when it comes to trading on DCMs like Kalshi. *Wojciechowicz v. Garland*, 77 F.4th 511, 518 (7th Cir. 2023) ("[W]here agency regulations conflict with statutory text, statutory text wins out every time."). In fact, that is ***exactly*** what the CEA does to an actual "federal regulatory law"—the federal securities laws referenced in its exclusive jurisdiction provision. 7 U.S.C. § 2(a)(1)(A) ("***Except as hereinabove provided*** [regarding contracts traded on DCMs],

---

[7] Plaintiff cites *EEOC v. Cherokee Nation*, 871 F.2d 937 (10th Cir. 1989). Opp. 16. That case concerned treaty rights, and the Tenth Circuit noted that the rule governing statutes of general applicability was "not applicable to treaty cases." *Id.* at 938 n.3.

nothing contained in this section shall . . . supersede or limit *the jurisdiction at any time conferred on the Securities and Exchange Commission* . . . .") (emphasis added).

Plaintiff also argues that Kalshi "is wrong to suggest that the [CEA] repealed any part of IGRA." Opp. 16. That is not what Kalshi has said or suggested. *See supra* Section II.A.1. Kalshi has never argued that the CEA *repealed* IGRA; rather, IGRA *did not address* the kind of internet-based transactions that Plaintiff challenges here. *See Iipay Nation*, 898 F.3d at 968 ("IGRA is silent" with respect to "financial transactions associated with gaming on Indian lands facilitated by the internet"). Instead, UIGEA addressed such transactions and carved out those conducted on DCMs. 31 U.S.C. § 5362(1)(E)(2); *see also* Mov. Br. 17-18.

## C. PLAINTIFF'S SOVEREIGNTY CLAIM FAILS TO SATISFY ARTICLE III'S CASE OR CONTROVERSY REQUIREMENT (COUNT IV).

The crux of Count IV is that Kalshi is infringing upon Plaintiff's sovereignty by conducting "sports gambling activities . . . in direct violation of the Nation's duly enacted Ordinance." ¶ 171. But as Kalshi has explained, Plaintiff has no sovereign interest that could be injured by Kalshi's conduct and thus has suffered no Article III injury. Mov. Br. 26-27; *see also* Robinhood Mov. Br. 20-21. Plaintiff has no answer to these arguments and in fact says virtually nothing about sovereignty in its Opposition. Indeed, Plaintiff appears to have abandoned any theory of sovereign authority over Kalshi, claiming instead that IGRA is the source of its "congressionally delegated" "regulatory authority." Opp. 17; *id.* at 19 (referring to "regulatory authority" "arising from IGRA"); *see also id.* at 15-16 (as to Count II, conceding it "is not relying on its retained inherent sovereign power, but rather congressionally delegated authority under IGRA").

In an attempt to salvage Count IV, Plaintiff points the Court to 28 U.S.C. § 1331, saying it "gives a district court subject matter jurisdiction to decide any claim alleging a violation of IGRA." Opp. 17. But Count IV does not assert a violation of—or even mention—IGRA; that is Count I.

More fundamentally, Kalshi does not contest that this Court has federal question jurisdiction over disputes arising under IGRA. But even where a Court has subject matter jurisdiction over a particular kind of dispute (under Section 1331 or otherwise), a Plaintiff must nonetheless satisfy Article III's case-or-controversy requirement. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016) (plaintiff does not "automatically satisfy[] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right").

Plaintiff argues it has sufficiently alleged sovereign harm by asserting that Kalshi "'illegally offer[s] its sports wagering contracts to persons located both on ***and off of the Indian lands*** in Wisconsin,'" thereby "'draw[ing] business away from the Nation's casinos.'" Opp. 18 (quoting ¶ 67). Plaintiff cannot seriously contend that Kalshi, a nonmember business based in New York, has infringed Plaintiff's sovereign authority by allowing persons who are ***not on*** Plaintiff's lands to trade on its federally regulated exchange. Plaintiff's authority—including its authority to regulate class III gaming—does not extend beyond its lands. *See Bay Mills*, 572 U.S. at 795 ("Everything—literally everything—in IGRA affords tools (for either state or federal officials) to regulate gaming on Indian lands, *and nowhere else*.") (emphasis added); *Jackson*, 764 F.3d at 782 ("[T]he sovereignty that the Indian tribes retain is of a unique and limited character. It centers on the land held by the tribe and on the tribal members within the reservation.") (quoting *Plains Com. Bank*, 554 U.S. at 327).

Nor is Kalshi "offering" products "on Indian lands." *See* Mov. Br. 14-16; 21-24; *supra* Section II.B.1. Even if Plaintiff were able to establish that Kalshi—by offering an entirely different product—was "drawing business away" from Plaintiff's casinos, that would not constitute harm to its sovereign interests. Mov. Br. 25; *cf. Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 946-47 (7th Cir. 2000) (tribe lacked legally protected interest sufficient to support intervention

where it claimed that its "casino operations will become less profitable" due to "economic competition"). To the extent that Plaintiff suggests it has a sovereign right to be free from competition that might be posed by a DCM like Kalshi, it cites no authority and has no answer to the rule that "inherent tribal sovereignty can be implicitly divested by federal regulatory schemes that are silent as to Indian tribes." *NLRB v. Little River Band of Ott. Indians*, 788 F.3d 537, 548 (6th Cir. 2015); Mov. Br. 25. Nor would "drawing business away" from Plaintiff's casinos constitute cognizable interference with its self-governance. Mov. Br. 25. Count IV fails to establish a justiciable case or controversy and should be dismissed with prejudice.

### D. PLAINTIFF FAILS TO STATE A LANHAM ACT CLAIM (COUNT V).

#### 1. The Opposition Fails to Remedy Plaintiff's Lack of Standing.

Plaintiff says it has adequately alleged a commercial injury sufficient to establish standing under *Lexmark* by asserting that Kalshi "draws business away from the Nation's casinos." Opp. 24. But a conclusory allegation of diverted business—without "the facts necessary to make those allegations plausible"—is insufficient. *MillerKing v. DoNotPay, Inc.*, 702 F. Supp. 3d 762, 772 (S.D. Ill. 2023); *McLaughlin v. Homelight, Inc.*, 2021 WL 5986913, at *2 (C.D. Cal. Sep. 17, 2021) ("summary" allegations that defendant "diverts potential consumers" were insufficient).

Plaintiff also suggests that the Court can infer injury to sales because it "is in direct competition with" Kalshi, repeatedly insisting that the Court "must" accept its allegations that Kalshi engages in class III gaming and therefore competes with Plaintiff's casinos. Opp. 24. But "conclusions[] are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Plaintiff does not explain how Kalshi offers consumers something "identical" to Plaintiff. *MillerKing*, 702 F. Supp. 3d at 773. Kalshi runs a nationwide exchange that offers event contracts, some of which involve sports. Plaintiff operates four casinos in Wisconsin with slots and card

19

games.  Plaintiff does ***not*** offer sports betting.  Saying the two compete is like arguing that walleye fishing tournaments take away from motocross because both involve the outdoors.

Nor has Plaintiff alleged harm to its commercial reputation.  Plaintiff concedes that none of Kalshi's advertisements refer to—let alone disparage—Plaintiff or its casinos, but asks the Court to conclude that it will suffer "lost revenue" in the future, preventing it from offering "services and support to its members" and eventually damaging Plaintiff's "reputation and goodwill."  Opp. 23.  This is pure speculation. *Martin v. Wendy's Int'l, Inc.*, 183 F. Supp. 3d 925, 932-33 (N.D. Ill. 2016) (no standing where "potential injury" to "future commercial activity" was "purely speculative").  And it does not fall within the statute's "zone of interests." *Maffick LLC v. Facebook, Inc.*, 2021 WL 1893074, at *5 (N.D. Cal. May 11, 2021) ("reputational injury must . . . be of a commercial nature").

The Opposition points to no causal link between Kalshi's advertisements and any alleged injury to Plaintiff.  The "conclusory allegation at the end" of the Complaint (¶ 184) is of the threadbare sort that courts routinely reject. *Lewis v. Acuity Real Est. Servs., LLC*, 597 F. Supp. 3d 1154, 1159 (E.D. Mich. 2022).  Plaintiff cites paragraph 67 (Opp. 23), which says ***nothing*** about Kalshi's advertisements, and paragraphs 93-98 (Opp. 25), which describe Kalshi's social media posts, but do not allege any purported impact.  Nor can Plaintiff overcome these deficiencies by citing a Florida district court decision, reversed on other grounds, in which the court relied upon a survey conducted years ago by a purported expert examining a different market, operating under a different legal regime in a different state, involving different casinos.  Opp. 25.[8]

---

[8] In that case, the plaintiff offered a purported expert analysis that supposedly showed how online sports gambling would affect certain casinos in Florida. *W. Flagler Assocs. v. Haaland*, 573 F. Supp. 3d 260, 268 (D.D.C. 2021), *rev'd on other grounds*, 71 F.4th 1059 (Fed. Cir. 2023).  The author of that analysis has since been sued for misappropriating and fabricating data during the course of his employment, including during the period when he authored the report referenced in

Even viewed in its "totality" (Opp. 23), the Complaint is devoid of any allegations that potential patrons of Plaintiff's casinos "viewed" Kalshi's advertisements, "let alone that the advertising influenced" their consumer decisions. *McLaughlin*, 2021 WL 5986913, at *2 (no standing where plaintiff failed to allege that misleading statements caused potential customers to choose competitors or plaintiff to lose transactions). Nor do the cases Plaintiff cites help its cause, as they involve precisely the kind of factual support absent here. *See Eli Lilly & Co. v. Arla Foods, Inc.*, 893 F.3d 375, 383-84 (7th Cir. 2018) (plaintiff provided "evidence" that a customer had "decided to cease using" its product "based in part on [defendant's] ads" and it was "easy" to trace plaintiff's harm to defendant's advertising); *Moreland v. Club 390 Corp.*, 2019 WL 13076638, at *3 (N.D. Ill. Aug. 26, 2019) (detailed allegations that plaintiffs' commercial reputations as professional models had been damaged by being used in strip club advertisements); *Towada Audio Co. v. Aiwa Corp.*, 2019 WL 1200748, at *7 (N.D. Ill. Mar. 14, 2019) (plaintiff alleged that defendant was using plaintiff's mark in its advertisements).

**2. The Opposition Does Not Identify Any Well-Pled Allegation of Falsity.**

The heart of Plaintiff's Lanham Act claim is that Kalshi has made "misleading and false statements" that it "permit[s] users to legally place sports bets and/or wages [sic] in all 50 States." ¶ 110; *id.* ¶ 177 ("Kalshi has misrepresented that its platform, websites, software, and/or applications are fully legal and accessible nationwide (in all 50 states)."). As the *Blue Lake Rancheria* court held in rejecting an identical claim, "Kalshi's advertisement is merely stating an opinion its product is legal," and therefore "is not 'literally or facially false.'" 2025 WL 3141202, at *2.

---

*W. Flagler*. *See* Complaint, *SocialSphere, Inc. v. Chavez*, No. 25-cv-2557 (Mass. Super. Ct.), Dkt. No. 1 (Oct. 15, 2025). In any event, the Complaint here offers no such facts or analysis.

The Lanham Act "prohibits only misrepresentations of fact," and not opinions, *Bd. of Forensic Document Exam'rs v. ABA*, 922 F.3d 827, 833 (7th Cir. 2019), but Plaintiff insists that "misleading statement[s] regarding legality [are] actionable" (Opp. 26). The two district court cases it cites, however, involved defendants who accused the plaintiffs of illegality[9] and are thus plainly inapposite to Plaintiff's claim, which accuses Kalshi of making statements that concern the legality of ***its own*** business, but say nothing about Plaintiff.

Plaintiff says that even if Kalshi's ads are statements of opinion, they are nevertheless actionable because Kalshi "lack[ed] a good faith belief" in the truth of its statements and "clearly intended" that its social media posts "be interpreted as statements of fact." Opp. 27-28. But Plaintiff nowhere alleges facts demonstrating either, let alone facts sufficient to survive the heightened scrutiny governing its claim under Rule 9(b). Plaintiff urges the Court not to apply Rule 9(b) because its claim does not "sound[] in fraud." Opp. 20-21. But that argument does not pass the straight-face test where Plaintiff accuses Kalshi of misleading consumers with statements made with "clear[] inten[t]" while lacking a "good faith belief" in their truth. *Id.* at 27-28. As the Seventh Circuit has observed, such claims plead "a form of fraud" that must be alleged "with particularity." *Gensler v. Strabala*, 764 F.3d 735, 737 (7th Cir. 2014); *see also Kunes Country Auto. Mgmt. Inc. v. Walters*, 2024 WL 2114006, at *8 (E.D. Wis. May 10, 2024) ("Seventh Circuit law confirms that Rule 9(b) applies to these claims.").[10]

---

[9] *Data Rsch. & Handling, Inc. v. Vongphachanh*, 278 F. Supp. 3d 1066, 1069 (N.D. Ind. 2017) (defendant defamed plaintiff by "telling others" that plaintiff was "operating an illegal… program" and was "an illegal company"); *Paul Davis Restoration, Inc. v. Everett*, 2014 WL 7140038, at *3 (E.D. Wis. Dec. 12, 2014) (plaintiff sued over ads accusing it of "breaking the law").

[10] Plaintiff's cases (Opp. 20-21) not only predated *Gensler*, but also found Rule 9(b) satisfied. *See Priority Int'l Animal Concepts, Inc. v. Bryk*, 2012 WL 6020044, at *5 (E.D. Wis. Dec. 3, 2012); *Thermal Design, Inc. v. Guardian Bldg. Prods., Inc.*, 2009 WL 1181327, at *3 (E.D. Wis. Apr. 29, 2009).

Plaintiff points to its allegation—on information and belief—that Kalshi has "knowledge" that the legality of its products is "highly questionable and widely criticized" and that in previous litigation over political event contracts, Kalshi made arguments regarding Congress's intent as to contracts that "serve no commercial purpose." Opp. 28; ¶ 77. Neither allegation demonstrates that Kalshi—which has adhered to the CEA and CFTC regulations in self-certifying its event contracts (Mov. Br. 19-20)—lacked a good faith belief in its compliance with the law, as the *Blue Lake Rancheria* court expressly found. 2025 WL 3141202, at *2 ("Plaintiffs have not shown . . . that Kalshi lacks a good-faith belief in the opinion's truth."). Nor can Plaintiff point to any particularized allegations that Kalshi clearly intended that stray social media posts be understood as objective fact or any support for its odd contention that Kalshi's statements cannot be opinions unless preceded by a disclaimer. The single case Plaintiff cites is plainly distinguishable, as the defendant had "actual knowledge that its legal assurances were false, or at least patently misleading," including because a "clear and unambiguous ruling" preceded the offending statements. *TNT Amusements, Inc. v. Torch Elec., LLC*, 2025 WL 945706, at *15 (E.D. Mo. Mar. 28, 2025), *reconsideration granted in part on other grounds*, 2025 WL 2336858 (E.D. Mo. Aug. 13, 2025).

Acknowledging the basic weakness in its Lanham Act claim as pled, Plaintiff attempts to change course, saying that it has actually alleged a second false statement—*i.e.*, that Kalshi has falsely stated that it "conducts sports betting." Opp. 26; *id.* at 28 (arguing that Lanham Act claim can "[u]ltimately" be "sustain[ed]" on the basis of this second alleged false statement). But that is not what the Complaint says. It says the opposite, repeatedly alleging that Kalshi is ***in fact***

conducting sports betting.[11]  Plaintiff points to paragraphs alleging that Kalshi's and Robinhood's social media posts refer to "betting."  Opp. 28 (citing ¶¶ 93-94, 96, 99-100).  But those paragraphs do not allege it is "false" for Kalshi to say that it conducts sports betting—presumably because the gravamen of Plaintiff's case is that Kalshi is doing exactly that.  Plaintiff tries to elide this inconsistency as "pleading in the alternative."  *Id.* at 29.  But the problem is one of legal sufficiency.  In any event, statements characterizing Kalshi's offerings as "betting"—a generalized term used in popular media to describe all kinds of investments[12]—are not "specific and measurable claim[s], capable of being proved false or of being reasonably interpreted as a statement of objective fact"; they are thus non-actionable.  *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999).

### 3. The Opposition Does Not Identify Any Well-Pleaded Allegation of Consumer Deception.

As the Moving Brief explained, Plaintiff has also failed to allege consumer deception.  In response, the Opposition points only to conclusory allegations and comments by purported social media users (Opp. 30 (citing ¶¶ 181-82)) and identifies no particularized facts even suggesting that

---

[11] *E.g.*, Compl. ¶ 1 ("This is an action . . . to prevent [defendants] from engaging in illegal sports gambling"); *id.* ¶ 5 ("Kalshi is engaged in sports gambling"); *id.* ¶ 46 ("Kalshi is engaging in illegal sports gambling . . . disguised as event contracts."); *id.* ¶ 61 ("It is simply gambling on sports.  And it is offered, unabashedly, by Kalshi."); *id.* ¶ 141 ("Kalshi is conducting class III gaming on the Nation's Indian lands . . . while . . . contend[ing] that its activities do not constitute gaming."); *id.* ¶ 147 ("Kalshi's sports gambling activities meet the definition of gaming."); *id.* ¶ 171 ("Kalshi's sports gambling activities").

[12] *See, e.g.*, James Royal, *Options vs. stocks: Which one is better for you?*, Yahoo! Finance (Aug. 25, 2025), https://finance.yahoo.com/news/options-vs-stocks-one-better-210539982.html (describing a stock option as a "side bet among traders over what the price of a stock will be at a certain time"); Grant Harvey, *Meta's $72B Superintelligence Bet is Building a Future that Could Kill Its Own Apps*, The Neuron (July 30, 2025), https://www.theneuron.ai/explainer-articles/metas-72b-superintelligence-bet-is-building-a-future-that-could-kill-its-own-apps (characterizing Meta's decision to invest in superintelligence infrastructure as "betting on a world" powered by personalized AI).

Kalshi's statements have deceived or influenced the purchasing decisions of "a substantial segment" of Plaintiff's consumer base. *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999). Social media reactions—none of which actually suggest consumer deception and all of which could easily be automated comments left by bots, trolls, or even members of Plaintiff itself—say nothing about the "universe of consumers whose opinions are relevant." *QVC Inc. v. Your Vitamins, Inc.*, 439 F. App'x 165, 168-69 (3d Cir. 2011).

### E. PLAINTIFF FAILS TO STATE A CIVIL RICO CLAIM (COUNT III).

Plaintiff defends its RICO claim by insisting repeatedly that the Court must accept its legal conclusions as true (*e.g.*, Opp. 33, 35, 36, 38), accusing Kalshi and Robinhood of "offering a different version of the facts" (*id.* at 30), and questioning Defendants' candor with the Court (*id.* at 36). All of this is meant to distract from the absurdity of this claim, which would require the Court to believe that two federally regulated derivatives market participants are engaged in a criminal racket.

#### 1. Plaintiff Has Not Alleged Any Predicate Acts.

The Complaint identifies three predicate acts: wire fraud (18 U.S.C. § 1343); transmitting wagering information in violation of the Wire Act (18 U.S.C. § 1084); and operation of an illegal gambling business (18 U.S.C. § 1955). ¶ 153; *see also* Opp. 33. None are anywhere close to adequately alleged.

##### a. Wire Fraud

Plaintiff does not and cannot allege wire fraud, not least because Plaintiff cannot point to any intent to defraud. Plaintiff identifies a single paragraph of its Complaint that selectively refers to arguments made by counsel in prior litigation concerning Kalshi's political event contracts. Opp. 34-35 (citing ¶ 114). Plaintiff cannot seriously contend that Kalshi's advocacy in a separate legal proceeding, considering a distinct question, demonstrates a specific intent to deceive or cheat.

*See United States v. Filer*, 56 F.4th 421, 434 (7th Cir. 2022) (intent to defraud requires a "willful act . . . with the specific intent to deceive or cheat, usually for the purpose of getting financial gain for one's self or causing financial loss to another") (internal citation and quotations omitted). Plaintiff complains that Defendants have provided no "legal support" for their belief that they are operating legally (Opp. 35), ignoring the court's decision in Blue Lake Rancheria, 2025 WL 3141202, at *2.  But Plaintiff has it backwards:  it is *Plaintiff's* burden to plead with particularity a willful act carried out with the intent that an illicit purpose be achieved, not *Defendants'* burden to prove that they believed in the legality of their conduct.  *See Kaye v. D'Amato*, 357 F. App'x 706, 714 (7th Cir. 2009); *Robinson v. City Colls. of Chi.*, 656 F. Supp. 555, 558 (E.D. Ill. 1987).

Nor has Plaintiff alleged anything resembling a fraudulent scheme.  The Opposition puzzlingly asserts that Defendants are "collect[ing] money . . . for class III gaming," while claiming "in their briefing"—but "not in their advertisements"—that "they are selling federally regulated derivatives contracts."  Opp. 34.  In other words, Plaintiff's theory is that Defendants are defrauding *the courts* through their "briefing" by hiding the fact that they are "conducting class III gaming," while not hiding any of this from *the public* to whom they are advertising and from whom they "collect money."  Opp. 34; *see also* ¶¶ 93-110.  If this is a scheme to defraud, it is not one that RICO recognizes.[13]

Confusingly, Plaintiff on multiple occasions conflates wire fraud with the other two asserted predicate acts.  *E.g.*, Opp. 31 ("Defendants committed wire fraud in violation of the Wire Act and 18 U.S.C. § 1955"); *id.* at 35 (referring to "alleged violations of the Wire Act" in discussing sufficiency of wire fraud allegations).  If Plaintiff is suggesting that it has alleged wire

---

[13] Plaintiff says Defendants cannot "avoid" wire fraud liability by "falling back on federal pre-emption."  Opp. 36.  But Defendants have not argued that the wire fraud predicate act is preempted.  Mot. 37-38; Robinhood Mot. 26-27.

fraud by alleging the other two asserted predicate acts, it is wrong. Wire fraud is an independent violation, requiring Plaintiff to allege distinct elements, subject to a heightened pleading standard. *Kaye*, 357 F. App'x at 710. Even if Plaintiff had adequately alleged violations of the Wire Act and Section 1955 (it has not), that would not suffice to allege wire fraud.

### b. The Wire Act and 18 U.S.C. § 1955

The Opposition also does little to cogently defend the Complaint's allegations regarding the Wire Act and 18 U.S.C. § 1955. Both require Kalshi's alleged conduct to be illegal under state gambling laws. As the Moving Brief explained (at 38-39), Kalshi's conduct is not—for three reasons. First, federal law exempts Kalshi's event contracts from the definition of "bet or wager," such that the Wire Act does not apply. Second, Wisconsin law similarly exempts trading of Kalshi's event contracts from Wisconsin's gambling statute, thus precluding application of either the Wire Act or Section 1955. And third, even if state gambling laws applied, they would be preempted by the CEA.

Plaintiff argues that application of UIGEA's statutory carveout would require the Court to ignore "factual allegations." Opp. 36. Nonsense. Statutory interpretation is a matter of law. And the Complaint itself alleges that Kalshi's event contracts are transactions conducted on DCMs and thus squarely within the carveout. ¶ 69. Nor does Plaintiff dispute (1) that UIGEA is the only federal law that defines what a "bet or wager" is, and (2) that in enacting UIGEA, Congress expressly took into account the Wire Act. Mov. Br. 38 & n.10. Plaintiff struggles with Defendants' cases without providing any contrary authority. But it is "the most rudimentary rule of statutory construction" that "courts do not interpret statutes in isolation, but in the context of the *corpus juris* of which they are a part, including later-enacted statutes." *Branch v. Smith*, 538 U.S. 254, 281 (2003) (if the meaning that "legislature attached to the words of a former statute" can be "gathered from a subsequent statute *in pari materia*," that meaning "will govern the

27

construction of the first statute" (citation modified)).  Plaintiff cites *Murphy v. NCAA*, 584 U.S. 453 (2018), arguing that it disproves any argument that the CEA, as amended, "created a whole new system for regulating sports betting."  Opp. 38.  Kalshi has never claimed that the CEA created a system of regulating sports betting; on the contrary, the whole point is that the CEA regulates derivatives markets, while leaving other matters (including regulation of sportsbooks) to the states. More to the point, *Murphy*, which overturned the Professional and Amateur Sports Protection Act on anti-commandeering grounds, says nothing about how this Court should interpret UIGEA, the Wire Act, or Section 1955.

Nor can Plaintiff overcome Wisconsin's decision to exempt "[c]ontracts for the purchase or sale at a future date of securities or other commodities"—such as Kalshi's sports event contracts—from the definition of "bet" in its gambling laws.  Wis. Stat. § 945.01(1)(a)(1) (2017). Plaintiff argues it has not alleged "that these contracts involve commodities."  Opp. 35.  In fact, it has alleged precisely that.  The Complaint asserts, accurately, that Kalshi's sports event contracts are traded on a DCM.  ¶¶ 69, 83.  Under Wisconsin law, a contract is a "commodity contract" if it is "[t]raded on or subject to the rules of a board of trade that"—like Kalshi[14]—"has been designated as a contract market for such a contract pursuant to federal commodities laws."  Wis. Stat.

---

[14] As the Complaint recognizes, KalshiEX LLC is a board of trade expressly authorized to list event contracts for public trading.  ¶ 69; *see also* 7 U.S.C. § 1a(6) (board of trade is "any organized exchange or other trading facility").  In 2020, "the CFTC authorized Kalshi . . . to list event contracts for public trading as a DCM."  *KalshiEX LLC*, 2024 WL 4164694, at *4.  Members of the public can only trade derivatives on a board of trade that the CFTC has designated as a contract market, or DCM.  7 U.S.C. §§ 2(e), 6(a)(1), 7(a); 17 C.F.R. § 38.3(a).  Thus, it is undisputed that Kalshi is a board of trade.

§ 409.102(dm)(1) (2018).[15]  Because Wisconsin has expressly exempted trading on a DCM from its state gambling laws, Kalshi's conduct cannot violate either the Wire Act or Section 1955.

And in any event, even if Kalshi's event contracts were subject to Wisconsin's state gambling laws, the CEA would preempt those laws.  Plaintiff argues that federal preemption does not apply because Plaintiff has alleged a violation of IGRA, a federal law.  Opp. 36.  But IGRA is beside the point; Plaintiff must allege a predicate act to sustain its RICO claim, which here requires violations of state gambling laws.  Plaintiff cannot do that because those laws are preempted.  *See* 7 U.S.C. § 2(a)(1)(A); *KalshiEX LLC v. Flaherty*, 2025 WL 1218313, at *4-6 (D.N.J. Apr. 28, 2025) (Kalshi likely to succeed in establishing field preemption).

Plaintiff cites three district court decisions from other circuits, claiming incorrectly that they rejected the preemptive authority of the CEA.  Opp. 36.  All three decisions are on appeal.  In two of the decisions—*Hendrick* and *Crypto*—a single judge in Nevada concluded that sports event contracts are not swaps, but only after the same judge reached the opposite conclusion.  *KalshiEX, LLC v. Hendrick*, 2025 WL 3286282 (D. Nev. Nov. 24, 2025); *N. Am. Derivatives Exch., Inc., d/b/a Crypto.com v. Nev. Gaming Control Bd.* (*Crypto*), 2025 WL 2916151 (D. Nev. Oct. 14, 2025).  That holding is irrelevant here, as explained above.  And neither ruling turned on the preemptive effect of the CEA; in fact, both expressly recognized that the CEA preempts state law as applied to trading of covered instruments on DCMs.  *Crypto*, 2025 WL 2916151, at *5; *Hendrick*, 2025 WL 3286282, at *3.[16]

---

[15] Plaintiff's criminal code, like Wisconsin state law, also exempts commodity contracts from its definition of "bet."  9 HCC § 945.01(1)(a)(1) (Ho-Chunk Criminal Code defining "bet" to *exclude* "[c]ontracts for the purchase or sale at a future date of securities or other commodities").

[16] Plaintiff accuses Kalshi of concealing these non-binding, district court cases and/or their procedural status from the Court.  Opp. 36.  Yet Plaintiff itself did not inform the Court of the pending appeals in each of these cases, and also did not mention that one of the decisions—in

2.    **Plaintiff Has Not Alleged a RICO Enterprise.**

Plaintiff argues it has adequately pleaded an association-in-fact enterprise by alleging that Defendants are "work[ing] together to offer online class III gaming on the Nation's Indian lands, in violation of IGRA and Wisconsin law." Opp. 32.  According to Plaintiff, Defendants cannot "disput[e]" such allegations.  *Id.* at 33 (characterizing allegations that Defendants "are conducting class III gaming in violation of IGRA and 17 C.F.R. § 40.11(a)" as "factual").  But on a motion to dismiss, courts are not required to accept legal conclusions as true.  *Bilek v. FDIC*, 8 F.4th 581, 586 (7th Cir. 2021).  The Court can and should reject Plaintiff's theory of IGRA and its reading of 17 C.F.R. § 40.11 as a matter of law.  *See supra* II.A; Mov. Br. 19-20.

Plaintiff argues that Defendants are engaged in an enterprise because they are offering "new and different" products that were launched at a "strategic[] time[]."  Opp. 32.  But offering a new product, whether or not strategically timed, is not unlawful.  And offering a new product does not mean that the business arrangement between Kalshi and Robinhood is somehow different from a typical DCM-FCM relationship or that Defendants have "joined together to create a distinct entity" with an illicit purpose.  *United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 855 (7th Cir. 2013).  Plaintiff insists that Defendants' revenue-sharing arrangement is "different" from Robinhood's typical "third-party partnerships," (Opp. 32-33), but does not deny that such arrangements—which the Supreme Court itself has described—are commonplace and hardly the stuff of a RICO enterprise.  *See* Mov. Br.

---

which the court reversed its own prior decision in favor of Kalshi—was issued ***after*** Kalshi and Robinhood filed their motions to dismiss.  *Hendrick*, 2025 WL 3286282, at *1-2 (order entered Nov. 25, 2025; notice of appeal filed Nov. 25, 2025); *Crypto,* 2025 WL 2916151 (notice of appeal filed Nov. 14, 2025); *KalshiEX LLC v. Martin*, 793 F. Supp. 3d 667 (D. Md. 2025) (notice of appeal filed Aug. 6, 2025).

35-36 (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 359 (1982) (explaining DCMs and FCMs "are financed by commissions")).

### 3.    Plaintiff Has Not Alleged a RICO Injury.

Plaintiff also fails to allege an injury establishing standing to bring a RICO claim.  Plaintiff argues that because it has a "legal monopoly" on class III gaming on its Indian lands, any "diver[sion]" of revenue is "concrete and foreseeable as a matter of law."  Opp. 38-39.  But "foreseeability does not cut it": as Plaintiff acknowledges, the alleged injury must be directly and proximately caused by the alleged RICO violation.  *Medical Marijuana, Inc. v. Horn*, 604 U.S. 593, 612 (2025); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 462 (2006).  Plaintiff cites no factual allegations supporting its claimed injury other than those concerning its "exclusive market" and "legal monopoly."  Opp. 38-39.  That is not the kind of "concrete" or "clear and definite" injury that courts require.  *Viehweg v. Ins. Programs Mgmt. Grp., LLC*, 2024 WL 4165078, at *1 (7th Cir. Sep. 12, 2024).

It is not just factual detail, but logic as well, that is missing from Plaintiff's framing of its RICO injury.  In evaluating the sufficiency of Plaintiff's allegations, the Court is "require[d]" to "draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.  Plaintiff claims that Kalshi's sports event contracts, which it offers online and nationwide, "divert[] revenue" from Plaintiff's casinos.  ¶ 168.  But Plaintiff does not currently offer sports betting, ECF No. 38 at 47 (admitting that Plaintiff does not offer sports wagering); Decl. of Robert Mudd, ECF No. 41 at ¶ 11, and therefore generates no sports betting revenue that Kalshi could possibly "divert."  Even if Plaintiff did offer sports betting, any loss in revenue would depend on consumers choosing to spend less money at its casinos, and Plaintiff offers no reason for the Court to conclude that would be the necessary result of Defendants' business activities.  The myriad possible other influences on consumer behavior and spending are precisely the sort of "independent propensies" that

undermine any "direct relation" between a consumer's decision to trade sports event contracts on Kalshi and that same consumer's decision to play at Plaintiff's casinos. *Child's Health Def. v. Meta Platforms, Inc.*, 112 F.4th 742, 766 (9th Cir. 2024); *Ratfield v. U.S. Drug Testing Lab'ys, Inc.*, 140 F.4th 849, 852 (7th Cir. 2025). Plaintiff's theory of RICO injury defies common sense.

### F. PLAINTIFF FAILS TO PLEAD ANY CLAIM AGAINST KALSHI INC.

Plaintiff has failed to allege any facts against Kalshi Inc.; legal conclusions do not suffice. *Bilek*, 8 F.4th at 586. Plaintiff claims that its allegations should be applied "collectively" to Kalshi Inc. and KalshiEX LLC (Opp. 40), in the absence of allegations specific to the parent entity. But Plaintiff does not dispute that Kalshi Inc. does not offer event contracts and admits that "parent corporations are not liable for the acts of their subsidiaries simply by virtue of their ownership." *Id.*; Mov. Br. 41. "A complaint based on a theory of collective responsibility must be dismissed." *Bank of America, N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). This is particularly true when, as here, Plaintiff has indiscriminately "'lumped together' multiple defendants" while asserting claims that must meet the heightened pleading standards of Rule 9(b). *See Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 778 (1994) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged [fraud] to 'defendants.'" (citation modified)). Regardless, even if the Court accepts Plaintiff's group pleading, Plaintiff's claims against Kalshi Inc. fail for all the reasons stated above.

### III.    CONCLUSION

The Court should dismiss the Complaint in its entirety with prejudice.


Dated: January 12, 2026                          Respectfully submitted,

                                                 */s/ Sarah A. Zylstra*
                                                 Sarah A. Zylstra (State Bar No. 1033159)
                                                 szylstra@boardmanclark.com
                                                 BOARDMAN & CLARK LLP

1 South Pinckney Street, Suite 410
P.O. Box 927
Madison, WI 53701
Telephone: (608) 257-9521
Facsimile: (608) 283-1709

Olivia S. Choe
ochoe@milbank.com
Joshua B. Sterling
jsterling@milbank.com
MILBANK LLP
1101 New York Avenue, NW
Washington, D.C. 20005
Telephone: (202) 835-7500
Facsimile: (202) 263-7586

Grant R. Mainland
gmainland@milbank.com
Karen Wong
kwong3@milbank.com
Victor Hollenberg
vhollenberg@milbank.com
MILBANK LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

*Attorneys for Defendants Kalshi Inc.
and KalshiEX LLC*