IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

HO-CHUNK NATION,

Plaintiff,

v.

KALSHI INC., KALSHIEX LLC, ROBINHOOD MARKETS, INC. and ROBINHOOD DERIVATIVES LLC,

Defendants.

OPINION and ORDER

25-cv-698-wmc

---

Plaintiff Ho-Chunk Nation, a federally-recognized Indian tribe, filed this lawsuit to prohibit defendants Kalshi Inc. and KalshiEX LLC (collectively, "Kalshi") and Robinhood Derivatives LLC, and Robinhood Markets, Inc. (collectively, "Robinhood") from offering online sports betting on its tribal land. Specifically, plaintiff claims that: (1) the sports-related "event contracts" that defendants offer on their nationwide prediction markets amount to unlawful gaming in violation of the Indian Gaming Regulatory Act, 25 U.S.C. § 2701-2721 ("IGRA"); (2) Kalshi's advertisements for "legal" sports betting are false or misleading in violation of the Lanham Act, 15 U.S.C. § 1125; and (3) all defendants are engaged in criminal racketeering in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c). Early in the case, defendants filed a motion to dismiss, which the court granted as to plaintiff's claims under the Lanham Act and RICO, but denied as to the IGRA claims. (Op. & Order (dkt. #97).) Plaintiff also filed a motion for a preliminary injunction, which the court denied after finding that, although plaintiff had shown a likelihood of success on the merits of its IGRA claim, it had not shown irreparable harm absent preliminary injunctive relief. (*Id.*)

Now before the court is plaintiff's motion to amend its complaint to replead its Lanham Act claims to include allegations that defendants' statements about the legality of sports betting are false under IGRA as well. (Dkt. #99.) That motion will be denied for the reasons set forth below. Also before the court is defendants' motion for a certificate of appealability and to certify for interlocutory appeal the court's order denying in part and granting in part their motion to dismiss. (Dkt. #101.) Because the issue here is novel, as well as percolating up to federal courts of appeals around the country and likely to the Supreme Court, that motion will be granted and this case will be stayed pending the outcome of defendants' interlocutory appeal.

OPINION

**I. Plaintiff's Motion for Leave to File an Amended Complaint**

Plaintiff's original Lanham Act claim was for false advertising based on Kalshi's allegedly false offering of *legal* sports betting in all 50 states. But the court dismissed that claim because under the current state of the law, there is no "clear and unambiguous" authority resolving whether Kalshi's sports event contracts are legal. *See Coastal Abstract Service, Inc. v. First American Title Insurance. Co.*, 173 F.3d 725, 731 (9th Cir. 1999) ("Absent a clear and unambiguous ruling from a court or agency of competent jurisdiction, statements by laypersons … purport[ing] to interpret the meaning of a statute or regulation are opinion statements, and not statements of fact."); *Dial A Car, Inc. v. Transportation, Inc.*, 82 F.3d 484, 489 (D.C. Cir. 1996) (there must be a definitive statement from the relevant governing agency that "the law was unambiguous *at the time [the] alleged misstatements were made*" (emphasis in original)). As this court explained in dismissing plaintiff's Lanham Act claim, courts have so far reached

"mixed opinions" as to the legality of Kalshi's sports event contracts. (Op. & Order (dkt. #97) 27). Since that dismissal, several more courts have weighed in, again with mixed results. *Compare KalshiEX, LLC v. Assad*, No. 25-7516, 2026 WL 2543846, at *7, 14 (9th Cir. Aug. 28, 2026) (holding that "[t]he CEA likely does not preempt Nevada's gaming regulations as applied to Kalshi's sports event contracts[,]" and "accepting Kalshi's argument that Congress delegated its power to regulate gambling (a power traditionally exercised by the States and Tribes) to the CFTC … would create a major-questions problem"), and *CFTC v. Wisconsin*, *et al.*, No. 26-C-749, 2026 WL 2474512, at *11 (E.D. Wis. July 29, 2026) ("CFTC has not shown that it is likely to prevail on its argument that the CEA's definition of 'swaps' covers the event contracts offered by entities such as Kalshi"), *with United States v. Minnesota*, No. 26-CV-2661 (KMM/DTS), 2026 WL 2150211, at *12 (D. Minn. July 27, 2026) (granting Kalshi's motion for preliminary injunction on grounds that CEA likely preempts state gambling law).

Nonetheless, plaintiff contends that it should be allowed to revive its false advertising claim by pleading that *IGRA*, 25 U.S.C. § 2710(d)(3), as opposed to state or other federal law, provides "definitive guidance that sports betting is not legal in all 50 states on Kalshi." (Plt.'s Br. (dkt. #99) 2.) Specifically, plaintiff argues that IGRA provides clear and unambiguous language prohibiting class III gaming on tribal lands unless expressly authorized by the tribe or conducted in conformance with a tribal-state compact. However, IGRA's statutory language is not as "definitive" or "unambiguous" as plaintiff asserts with respect to the legality of Kalshi's sports event contracts. Not only does that statute *not* expressly address multiple, complex questions at issue here, including whether Congress must authorize federal regulation of gambling before an agency may claim that right, but to date, the only two courts to have considered the specific question regarding IGRA and online sports events contracts have

reached differing conclusions. *Compare* Op. & Order (dkt. #97) 8, *with Blue Lake Rancheria v. Kalshi Inc.*, 2025 WL 3141202, at *6 (N.D. Cal. Nov. 10, 2025) (finding that IGRA does not govern Kalshi's sports event contracts). Moreover, there have been no "definitive" decisions regarding whether the CEA may preempt IGRA on the issue of so-called "sports events contracts" now listed on a derivative exchange. Thus, even though this court concluded that plaintiff had shown a likelihood of success on its IGRA claim, that is not sufficient to revive plaintiff's false advertising claim.

Alternatively, plaintiff argues that Kalshi's original advertisements purporting to offer "sports betting" or "sports gaming" are false or materially misleading to consumers on their face, since Kalshi actually purports to be offering event contracts on a derivative exchange. Thus, plaintiff argues, by using the terms "betting" and "gaming," Kalshi is either in violation of IGRA *or* is misrepresenting the nature of its services in violation of the Lanham Act. However, as this court recognized throughout its earlier opinion, Kalshi *does* offer sports betting. (Op. & Order (dkt. #97) ("the activity at issue here is sports betting"); *see Assad*, No. 25-7516, 2026 WL 2543846, at *11 ("Kalshi's attempts to distinguish its sports event contracts from sportsbooks betting are unpersuasive."). The fact that Kalshi changed its business strategy to emphasize its betting as "sports event contracts" does not make its original advertisements false or misleading unless definitively found to be in violation of the law.

Because plaintiff's proposed amended complaint does not state a claim under the Lanham Act for false advertising, therefore, plaintiff's motion for leave to amend will be denied as futile. *See Indiana Funeral Directors Ins. Tr. v. Trustmark Ins. Corp.*, 347 F.3d 652, 655 (7th Cir. 2003) (courts can deny leave to amend under Fed. R. Civ. P. 15 if amendment would be futile).

## II. Defendants' Motion for Certification of Interlocutory Appeal

That leaves the question whether to certify for interlocutory appeal the following legal questions proposed by defendants:

> (1) whether an alleged violation of a tribal gaming ordinance is actionable as a compact violation under IGRA; and
>
> (2) whether the CEA's grant of exclusive jurisdiction to the CFTC bars Indian tribes such as Plaintiff from regulating derivatives traded on DCMs, as confirmed by UIGEA's express carve-out for transactions on DCMs in the context of internet gaming legislation.

(Dfts.' Br. (dkt. #102) 2.) Before certifying an order for interlocutory appeal, a court must find that "[its] order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Said another way: (1) there must be a question of law, (2) that is controlling, (3) contestable and (4) its resolution must promise to speed up the litigation. *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000) (citation omitted).

As an initial matter, the court agrees with plaintiff that the questions as phrased by defendants above do not accurately reflect the court's reasoning and conclusions as set forth in the May 11, 2026, opinion and order granting in part and denying in part defendants' motion to dismiss. Instead, the controlling questions in the court's view are more accurately phrased as follows:

> (1) Can the Nation bring a claim under IGRA to enjoin class III gaming, unauthorized by the tribe but offered on tribal land by an entity that is not party to the Tribal-State compact? (This court answered "yes.")
>
> (2) Does the CEA or UIGEA preempt the Nation's authority under IGRA to regulate class III gaming activity that is offered on tribal lands in the form of sports events contracts on a derivative exchange? (This court answered "no.")

Phrased as such, the court agrees with defendants that the four criteria for certifying the court's opinion and order for interlocutory appeal are satisfied. First, even plaintiff concedes that the court's opinion "turns on pure questions of law." (Plt.'s Opp. Br. (dkt. #105) 4.) Second, the questions are controlling. If the Seventh Circuit disagrees with this court's ruling on either question, plaintiff's claims against defendants must be dismissed. Third, the questions are contestable as reflected by mixed decisions from courts around the country as to both questions. *See* discussion, *supra*. Finally, resolution of these questions will unquestionably speed up the litigation. In particular, regardless how this court rules ultimately on the merits, the case will certainly be appealed all the way up to the Supreme Court. Asking the Seventh Circuit to address these questions now creates a possibility that controlling legal issues may be more efficiently resolved without summary judgment or trial. The court recognizes that interlocutory appeals under § 1292(b) are "'not intended merely to provide review of difficult rulings in hard cases.'" *Union County v. Piper Jaffray & Co.*, 525 F.3d 643, 646 (8th Cir. 2008) (quoting *U.S. Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966) (per curiam)). Given that this case presents novel and complex questions for which there is no controlling precedent in this circuit, the court concludes that permitting an interlocutory appeal is appropriate in this case.

A final remaining question is whether this case should be stayed pending the outcome of an interlocutory appeal. The parties address defendants' entitlement to a stay under under standards mirroring those for granting a preliminary injunction. *See In re A & F Enters., Inc. II*, 742 F.3d 763, 766 (7th Cir. 2014) ("The standard for granting a stay pending appeal mirrors that for granting a preliminary injunction.") In brief, this means courts consider the likelihood of success on the merits, the irreparable harm that each side stands to incur, and the public's

interest in the outcome. (*Id.*) However, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Tex. Indep. Producers & Royalty Owners Ass'n v. E.P.A.*, 410 F.3d 964, 980 (7th Cir. 2005) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)); *see also Munson v. Butler*, 776 F. App'x 339, 342 (7th Cir. 2019) ("[A] district court has inherent power to exercise its discretion to stay proceedings to avoid unnecessary litigation of the same issues.")

Aside from possible disputes over damages, the outcome of this case is not likely to turn on the resolution of factual disputes, but rather on resolution of legal questions that the Seventh Circuit could consider now if it accepts defendant's interlocutory appeal. If the case were to continue simultaneously in this court, the next stage would likely be summary judgment, during which this court would face the very same legal questions, albeit far less definitively. To avoid duplication of effort and unnecessary resources and expense that would arise from litigating the same claims in two courts, the court will stay this case pending the outcome of defendants' interlocutory appeal.

ORDER

IT IS ORDERED that:

1) Plaintiff Ho-Chunk Nation's motion for leave to amend its complaint (dkt. #99) is DENIED.

2) Defendants' motion for certification of interlocutory appeal (dkt. #101) is GRANTED, and this court CERTIFIES its May 11, 2026, opinion and order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

3) Consistent with this order, the court will STAY all proceedings pending resolution of the legal questions certified for interlocutory appeal provided defendants seek leave to appeal from the Seventh Circuit expeditiously.

Entered this 11th day of September, 2026.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge